———

(65 App. Div. 378.)

## In re SCHAEFER et al.

(Supreme Court, Appellate Division, First Department.  November 22, 1901.)

1. EXECUTORS — FINAL SETTLEMENT — REFEREE'S REPORT — MODIFICATION BY SURROGATE.

Under Code Civ. Proc. § 2546, authorizing the surrogate, in a proceeding to settle an executor's account, to appoint a referee to take and report to the surrogate the evidence on the facts, to examine an account rendered, and to hear and determine all questions arising on the settlement thereof which the surrogate has power to determine, "subject, however, to confirmation or modification by the surrogate," the surrogate has power to modify the referee's report, and to himself determine on the evidence submitted to the referee any question presented on the accounting.

2. SAME—JURISDICTION.

Code Civ. Proc. § 2731, provides that the surrogate, on the settlement of an executor's account, shall have the power to determine any question respecting property alleged to belong to the estate and claimed by the executor.  Two executors were officers and directors in a corporation in which testator was a stockholder, and certain money was voted to them out of the corporation's profits as alleged extra compensation for their services.  Held, that the question whether the executors had abused their powers as officers and directors of the corporation in voting such extra compensation to themselves, or in distributing the corporation's property, could not be determined in a proceeding before the surrogate to settle the executors' account, but only whether the money so received was received by them in their individual capacity, or as profits of the estate in the corporation.

3. SAME—FUNDS CLAIMED BY EXECUTORS AS INDIVIDUAL PROPERTY.

Testator and his brother formed a corporation, the shares of stock being divided equally between the members of their respective families.  Prior to testator's death, the profits were divided between him and his brother as extra compensation for their services as officers, and no dividends were declared.  After the two brothers retired from active management of the corporation, two of testator's sons became its officers.  From 1889 to testator's death, in 1897, a sum of money was voted the sons each year as extra compensation, the amount being based partly on the year's business.  On testator's death the two sons qualified as his executors.  Thereafter, each year, a sum of money was voted them by the corporation.  On a proceeding to settle their accounts, the executors testified that the money was paid them as extra compensation; that they received more than other officers because doing more work; that the money was voted because their salaries were insufficient; and that prior to testator's death no part of the money voted them was divided with the other members of testator's family or accounted for to testator.  Held, that the money received by the sons subsequent to testator's death was received by them in their individual capacity, as compensation for their services to the corporation, and not as profits of the corporation belonging to the estate.

Appeal from surrogate's court, New York county.

Proceeding for the final settlement of the accounts of Edward C. Schaefer and others, executors of Frederick Schaefer, deceased. From the decree of the surrogate rendered on the report of a ref-

eree (69 N. Y. Supp. 489), two of the executors, and Albert Schaefer, a beneficiary under the will, appeal. Reversed in part and affirmed in part.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Roger Foster, for appellants Edward C. Schaefer and George G. Schaefer.

George P. Hotaling, for respondent George H. Chatillon.

E. W. Tyler, for respondents Ralph F. Chatillon and others.

INGRAHAM, J. There is but one substantial question presented upon this appeal, and that is as to the propriety of charging the appellants, as executors, with the sum of $34,615.38, received by them as extra compensation for services rendered to a corporation known as the F. & M. Schaefer Brewing Company. The testator, Frederick Schaefer, died on May 27, 1897, and his two sons, Edward C. Schaefer and George G. Schaefer, and his son-in-law, George H. Chatillon, were appointed executors by his last will and testament, which was duly admitted to probate, and letters testamentary issued thereon. It appears that for many years the testator and his brother Maximilian Schaefer had been brewers in New York, and had established a large and lucrative business; that some time before the testator's death a corporation had been organized for the purpose of continuing that business, the stock in which corporation was equally divided between the two brothers, who had been copartners; that subsequent thereto the business had been carried on by the corporation; that these two brothers had transferred a portion of the stock held by them in the corporation to certain of their children, but each of the brothers and their children owned half of the stock in the corporation, and members of their respective families were the directors and officers of the corporation. Prior to the death of the testator, it would appear that the profits in the corporation, instead of being declared as dividends upon the stock, had been divided between the two brothers, who were managing directors, as extra compensation for services rendered, and, although large profits were realized in the conduct of this business, no dividends had been declared. The extra compensation thus paid to the directors appears to have been divided between the two principal owners of the stock, the testator receiving one half of the amount thus paid, and the other half being paid to Maximilian Schaefer. There was another corporation organized, called the Schaefer Company, in which the stock was held in the same way, and to which was transferred certain real estate theretofore owned by the brothers, and this corporation was managed in substantially the same manner as that of the brewing company. There is presented on this appeal, however, no question as to the Schaefer Company.

It would seem that, upon a petition of some of those interested in the estate, the executors were required to account, which proceeding was subsequently turned into a voluntary accounting. The two sons of the testator, who were two of the executors, filed an account to which the third executor, a son-in-law of the testator, filed certain

objections, as did also certain other members of the testator's family. The questions arising upon this account and the objections filed to it were referred to a referee. The question presented upon this appeal arose upon an objection to the account, whereby it was sought to charge the executors with certain sums of money received by the appellants from the Schaefer Brewing Company, which were paid as extra compensation for services rendered to the company as president and treasurer. The referee overruled these objections, holding that the salary and extra compensation paid to these two executors (appellants) were not property of the estate received by them for which they were accountable in this proceeding, and finding that, "from the evidence, the inference is that the salary and extra compensation voted and paid to Edward C. Schaefer and George G. Schaefer, as officers of the brewing company, were so voted and paid as a corporate act exercised by the directors of the company, and was consonant with its traditions and customs; that the amounts of salary and extra compensation were fixed by said directors; were not excessive, nor larger than had usually been so voted and paid in years of similar prosperity of the company, and were paid for valuable services rendered, and not for dividends on stock; and that, the salary and extra compensation having been earned and received for services which were not executorial, the court has no jurisdiction to compel its distribution among the beneficiaries of the estate."

The other executor and several of those interested in the estate filed exceptions to this report of the referee, and, the proceeding coming on before the surrogate, the exceptions were sustained, the surrogate holding that upon the evidence these moneys received by the two executors from the corporation were not, either in whole or in part, due or owing to them for any services whatever, and that they were paid to them as a method of dividing profits, at the same time that similar payments were made to other officers of the corporation representing similar amounts of stock, the owners of which stock did not object to, but approved of, such a method of apportioning profits, and that they received such payments as representing one-half of the entire stock of the corporation, including the stock held by them as executors, the stock held by them as individuals, and the other small stock interests which had been derived, directly or indirectly, from the testator; the surrogate saying:

"So long as the two brothers lived and the families were harmonious, the large sums distributed and divided between the families by common consent were not improper. It is even now proper for those of the stockholders who approve to continue the same methods, but the executors of the testator may not, contrary to the protest of the beneficiaries under their father's will, retain for themselves what they equitably should share with the persons now entitled to the stock."

Upon this decision a decree was entered sustaining the objections to the account, and directing an apportionment of the money so received as extra compensation, so that the stock held by the executors as such should receive its fair proportion of the profits of the corporation; and from the decree entered upon this decision two executors appeal.

The power of the surrogate to charge these appellants with the amount thus received from the corporation as compensation is questioned by the appellants, who claim, first, that the surrogate had no power to set aside the finding of the referee, and that his jurisdiction was limited to entering a decree in pursuance thereof. Section 2546 of the Code of Civil Procedure, however, which authorizes a reference in such a proceeding, is, we think, an answer to that objection. Authority is there given to the surrogate to appoint a referee to take and report to the surrogate the evidence upon the facts to examine an account rendered, and determine all questions arising upon the settlement of such account which the surrogate has the power to determine, and to make a report thereon, subject, however, to confirmation or modification by the surrogate. Under this provision, we think the surrogate had power to modify the report, and himself determine, upon the evidence submitted to the referee, any question presented upon the accounting.

The appellants also object to the jurisdiction of the surrogate to determine upon this proceeding any equitable cause of action which either the corporation making these payments, or the stockholders of the corporation as such, had against these appellants as officers of the corporation in relation to these payments for extra compensation received by the appellants from the corporation. There can be no doubt but that the surrogate's court is a court of special and limited jurisdiction, and is not vested with the power of a court of equity; its jurisdiction being confined to cases relating to the granting of administration of estates of deceased persons and questions incidental thereof, and such additional jurisdiction as is expressly conferred by statute. By section 2731 of the Code, power is given to the surrogate, upon the judicial settlement of the accounts of an executor or administrator, to determine any question respecting property alleged to belong to the estate, but to which the accounting party lays claim, and this, we think, is the limit of the power of the surrogate in such a contest. The question that the surrogate had to determine was whether this money received by the executors belonged to the estate of the decedent, and that depended upon whether it was as a fact received by the appellants as a portion of the estate, or as the income or profits of the interest of the estate in the stock of the brewing company. To entitle the surrogate to charge these executors with money thus received by them, there must be competent legal evidence to show that such money actually belonged to the estate of which they were executors, either as money or the proceeds of property belonging to the estate, or as income or profits of the property vested in them as such executors. These appellants had, long prior to the testator's death, acted as officers of this corporation, engaged in managing its affairs. After the testator's death they continued in charge of the affairs of the corporation, managing its business, responsible to it for their acts as such officers. The services that they performed for the corporation were entirely distinct from their executorial duties as representing this estate. It is quite clear that they would not be responsible to the estate for their acts as officers of the corporation in any pro-

ceeding that could be instituted before the surrogate. While a court of equity would, under certain circumstances, have power to hold them to account at the suit of a stockholder, the surrogate had no jurisdiction of such a cause of action. His jurisdiction would be limited to a determination of the question as to what assets of the estate had come into the hands of the executors for which, upon an accounting, they were properly chargeable. The question as to whether or not these appellants had abused their power as directors and officers of the corporation in voting to themselves extra compensation to which they were not entitled, or in distributing the property or assets of the corporation improperly, cannot be determined in this proceeding. In examining this testimony we must keep in view this limitation, as it is not intended to determine the broader question as to any right that the corporation or its stockholders have to call these appellants to account for their acts as officers of the corporation.

The facts that led the referee to determine that this money paid by the corporation to the appellants as extra compensation was not money of the estate for which they were accountable in this proceeding, and upon which the learned surrogate arrived·at the opposite conclusion, are not in substantial dispute. Long before the testator's death, he and his brother Maximilian Schaefer had retired from the active management of the corporation, each receiving, however, as managing director, a salary of $20,000 per year, which, by a resolution of the directors, it was agreed should be paid to the estate of either who should die for five years after his death. This sum of $20,000 per year has been received by these appellants, and has been by them credited to the estate. In addition to this sum of $20,-000, the corporation paid to each of these brothers what was called "extra compensation." Thus, in 1890 each received $60,000. In each year from 1891 to 1896, inclusive, each received $50,000. In 1897 and 1898 each received $40,000, the testator dying May 27, 1897, and this amount of $40,000 per year after the death of the testator was received by the appellants as executors, and for which they have accounted. In the year 1899, $10,000 was paid to Maximilian Schaefer, and $10,000 to the estate of the decedent, which was also accounted for by the executors; and the evidence is that this extra compensation was paid to the persons thus interested in the stock as the earnings of the company, and in lieu of dividends. During this period the appellant George G. Schaefer was treasurer of the brewing company, and the appellant Edward C. Schaefer was its president. In 1890, Edward C. Schaefer received a salary of $8,000, and George G. Schaefer a salary of $5,500. Subsequently, and prior to the death of the testator, the salary of George G. Schaefer was increased to $8,000; so that during the years 1897, 1898, and 1899 each of these executors received a salary from the corporation of $8,000 per year. From the year 1889 to the death of the testator there had been voted to these officers each year a sum of money as extra compensation. The amount of this appears to have been based to some extent upon the results of the business during the year. Thus, in 1889, Edward C. Schaefer received $6,500,

and George G. Schaefer $3,500. As George G. Schaefer's salary was raised, the amount of extra compensation that was paid to him was also increased; so that, when his salary was made equal to that of Edward C. Schaefer, the extra compensation that he received equaled that paid to Edward C. Schaefer. In the year 1898 extra compensation was paid to Edward C. Schaefer of $10,000, and to George G. Schaefer of $10,000. In 1896 the same amount of extra compensation was paid. This was prior to the death of the testator, who died May 27, 1897. In 1897 there was paid to Edward C. Schaefer $10,000, and to George G. Schaefer $10,000, and the same amounts in 1898. In 1899 Edward C. Schaefer was paid an extra compensation of $2,500, and George G. Schaefer $3,100; and it is for these sums paid by the corporation to these two officers for the years 1897, 1898, and 1899 that these appellants have been held accountable to the estate as moneys received by the executors as the income of stock of this corporation held by the estate.

These two executors were called as witnesses for the contestants. From their testimony it appeared that the extra compensation paid to the officers was not divided equally between members of the two families who were officers of the company, the sons of the testator receiving an amount in excess of that allowed to the sons of Maximilian Schaefer, for the reason that the sons of the testator did the bulk of the work in managing the corporation. These sums were paid to these officers of the corporation under a resolution of the board of directors. The resolution itself was not before the referee, but the method of voting this compensation was detailed by the president of the company. He testified that at the end of the year there was always extra compensation voted to the officers, and that was done simply because the amount of the salaries was not sufficient for the position that they occupied; that the services of the treasurer of the corporation were worth $20,000 a year, and that the services of the president of the corporation were worth $25,000 a year, and this was not disputed by the contestants; that prior to the death of the testator no part of the extra compensation voted to the officers of the company, including these two appellants, was turned over to any other members of the family, or accounted for by them to their father, or to any one else, as dividends upon the stock; that the amount of extra compensation paid to these officers was not increased after the death of the testator, but, on the contrary, diminished, as during the year 1898 the dividends of the business were less than in prior years. Both of the appellants were examined as to this extra compensation, and some confusion appears to have been caused by the answer of the witness Edward C. Schaefer as to the basis upon which it was awarded; but there is no evidence to show that it was paid directly or indirectly to them as dividends upon the stock held by the estate, or that this extra compensation to the executive officers of the company was paid as a method of distributing the profits. In form it was paid as compensation for services rendered to the corporation, and was received by the appellants from the corporation as such compensation. The estate, as a stockholder of the corporation, could have no claim against it for

dividends upon its stock until a dividend was actually declared by the directors and directed to be paid to the stockholders. If this money had not been paid to the appellants, it would still remain in the treasury of the company as a part of its assets, and neither the estate nor any other stockholder would have been entitled to it as against the corporation. Whatever right the corporation has to call to account its directors or officers for making these payments, it is entirely clear that the stockholders, as such, would have no legal claim against the persons to whom these payments had been made to recover from them the money so paid by the corporation.

The surrogate allowed this charge against these executors apparently upon the ground that the payment of extra compensation to these officers was adopted as a method of dividing the profits of the business among the stockholders. While it is true that the payments to the testator and his brother as managing directors were made as a method of making such a distribution, there is no evidence to show that the money paid as extra compensation to the executive officers of the company was paid upon such a basis or for such purposes, except the inference from the fact that extra compensation was paid to the sons of Maximilian Schaefer, and also to the sons of the testator, all of whom were officers of the company. But this inference is insufficient to take the place of proof, and it seems to me to be entirely overborne by the fact that this extra compensation was allowed to these executive officers long before the death of the testator, was received by them in payment for services, and was not accounted for to the other stockholders. Could it be claimed that the appellants' testator could have recovered from them any proportion of the amount paid to them prior to his death, upon the ground that the stockholders of the corporation were entitled to a proportionate amount of the moneys so paid to them? In this respect the estate stands in the exact position that the testator would have stood had he continued to live. To sustain the decree, it must appear that the money was received for the benefit of the estate, and that the estate was legally entitled to it as money paid to the executors on account of the interest of the estate in the corporation. It seems to me that this is not sustained by the evidence, and that this money was paid to the officers of the corporation individually, in the shape of compensation for services that they had rendered to the corporation, and not as property to which the estate was entitled.

It follows that the decree of the surrogate sustaining the objection to the report of the referee must be reversed, with costs, and the decree modified by disallowing this objection to the account.

There is also an appeal by Albert Schaefer from so much of the decree as awards commission to Edward C. Schaefer and George G. Schaefer, as executors and trustees. We do not think we would be justified in reversing the action of the surrogate in this respect. Upon the appeal of Albert Schaefer, therefore, the decree must be affirmed. All concur.