In the Matter of the Accounting of ELLA S. THOMPSON, as Executrix of FRANCIS A. THOMPSON, Deceased.

ELLA S. THOMPSON, Individually and as Executrix, Appellant; CHARLES A. BRYAN, Respondent.

SURROGATE HAS NO JURISDICTION TO ENFORCE CREDITOR'S LIEN AGAINST INSURANCE MONEYS UNDER SECTION 22, DOMESTIC RELATIONS LAW — CODE CIV. PRO. §§ 2472, 2481, 2596, 2712, 2731. A surrogate has only such jurisdiction as is expressly or by necessary implication conferred by statute. While the tendency of recent legislation has been to enlarge his powers, he has not yet been given the broad powers of a court of equity which are necessary to enforce a creditor's lien upon the proceeds of a policy of insurance issued on the life of a husband in which the wife was named as the beneficiary and the annual premium on which was in excess of $500, and to determine, in a proceeding by a creditor of the estate to compel her as executrix to account, whether as between her individually and the creditors of her deceased husband any part of such proceeds is chargeable with a lien in favor of his creditors under the Domestic Relations Law. (L. 1896, ch. 272, § 22). The Code of Civil Procedure (§§ 2472, 2481, 2596, 2712, 2731) confers no such jurisdiction either expressly or impliedly; the amount of insurance purchased by the excess

of premiums does not belong to the husband in his lifetime and forms no part of his estate after his death even as to creditors; the premiums paid do not constitute a debt against his wife in favor of himself or his estate; the proceeds are not assets and cannot be included in the inventory; they are liable "primarily" for his debts solely by force of the statute; they constitute a separate fund, devoted exclusively to the payment of the deficiency arising after all the assets of the estate have been applied upon the debts, while the surplus, if any, is to be returned to the widow. The phrase "property alleged to belong to the estate," as used in section 2731 of the Code, means property which is "deemed assets" as defined in section 2712, and which may be inventoried under section 2714. An allegation in the petition, therefore, that the insurance moneys were property of the estate, gives the surrogate no jurisdiction to try the question of title or enforce the lien any more than if a similar allegation had been made with reference to the title to real estate or other matters over which the surrogate has no jurisdiction.

2. PROCEDURE TO ENFORCE LIEN. The orderly course of procedure in such a case is by a representative action to establish and enforce the lien after the assets of the estate have been exhausted and the amount required to pay the remainder of the husband's debts has been established by a surrogate's decree, and in such an action distribution may be made and circuity thus avoided.

*Matter of Thompson*, 102 App. Div. 617, reversed.

(Argued January 10, 1906; decided February 13, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered February 15, 1905, which affirmed a decree of the Kings County Surrogate's Court surcharging the accounts of the executrix herein in a proceeding for an involuntary accounting.

The facts, so far as material, are stated in the opinion.

*Henry Hill Pierce* for appellant. The surrogate had no jurisdiction to determine the question whether the proceeds of this policy were liable to the claims of the husband's creditors. (*Matter of Colton*, 159 N. Y. 129; *Kittel* v. *Domeyer*, 175 N. Y. 205; *Matter of Bunting*, 98 App. Div. 122; *Montgomery* v. *Boyd*, 78 App. Div. 64; *Matter of Kellogg*, 39 Hun, 275; *Matter of Randall*, 152 N. Y. 508.)

*Edward W. S. Johnston* for respondent. The court below had power to pass upon the question whether the account of

the appellant should be surcharged with the proportion of the insurance money purchased by the appellant's testator by premium in excess of $500, and the surrogate was not called upon to determine any disputed question of title. (Code Civ. Pro. § 2472; *Matter of Lamb*, 22 N. Y. S. R. 350; *Matter of Mull*, 16 N. Y. S. R. 982; *Matter of Ammarell*, 38 Misc. Rep. 400; *Matter of Dummett*, 38 Misc. Rep. 478; *Matter of U. S. Trust Co.*, 175 N. Y. 304.)

VANN, J. This proceeding was commenced before the surrogate of Kings county by Charles A. Bryan, a creditor of Francis A. Thompson, deceased, to compel Ella S. Thompson, his executrix, to make and file an account of her proceedings. An order was made accordingly and thereupon she filed an account in which she stated that all the property received by her as executrix was worth but ten dollars, and that she had paid out for funeral expenses the sum of $188, thus leaving a deficit. The creditor filed objections to the account and alleged that the executrix had omitted to state the collection by her of about $13,000, " said sum being the proportionate amount of a certain policy of life insurance, issued on the life of the above named decedent by the Equitable Life Assurance Society of the United States on or about the 27th of February, 1895, for the sum of $34,000, upon which the annual premium paid by the decedent in his lifetime was $806.14, and three-eighths of said sum of $34,000 formed a part of the estate of said decedent." The issue was tried before the surrogate against the objection of the executrix promptly made at the beginning of the trial and many times renewed during its progress, that he had no jurisdiction to try the question whether said sum of $13,000 belonged to the wife, the beneficiary named in the policy, or to the estate of the decedent, or to his creditors. The objections were overruled and the executrix excepted.

Upon the trial it appeared that one John Mortimer died on the 28th of September, 1875, leaving a daughter, Ann E. Thompson, who died in January, 1901, leaving a son, the

decedent Francis A. Thompson, who died in March, 1901, leaving Ella S. Thompson his widow and executrix. By the will of John Mortimer a trust fund amounting to $68,850 was created and the trustees were directed to pay the income therefrom to said Ann E. Thompson during her life and after her death to divide the corpus among her lawful issue. The decedent, as one of her two children, thus became entitled in remainder to one-half of the fund in case he survived his mother. In March, 1895, he transferred his interest in the fund to one Cohen in consideration of $17,000, of which $5,000 was to be retained by Cohen and applied by him in payment of the annual premiums upon a policy of insurance issued at about the same time by the Equitable Life Assurance Society upon the life of the decedent for the sum of $34,000 in favor of his wife. By a tripartite agreement entered into between the decedent, his wife and said Cohen, it was provided that if the entire amount of the sum thus appropriated to pay the premiums was not required, the remainder was to be paid by Cohen to the decedent, his wife or the survivor. As a part of the arrangement Mrs. Thompson assigned the policy to Cohen to protect him against the contingency of the death of the decedent before his mother, but in case he survived his mother it was agreed that the policy together with all rights and interests accruing thereunder should be reassigned to Mrs. Thompson. Cohen also agreed to pay the premiums on the policy until said sum of $5,000 devoted to that purpose should be exhausted, while the decedent and his wife agreed that they would then deposit annually with Cohen an amount sufficient to pay the current premium. Seven annual premiums of $806.14 each were paid on said policy, of which five were paid by Cohen out of the fund of $5,000, while the other two were not paid by the decedent or out of his property. The decedent survived his mother for a few months and died in March, 1901. In the month of April following the insurance company paid $34,000, the amount called for by the policy, to Cohen, and in January, 1902, Cohen paid the same to Mrs. Thompson after deducting the sum of $1,250, allowed

for the expenses of certain litigation that had sprung up, and took a release from her individually and as executrix.

The surrogate found these facts among others and adjudged that the account of the executrix should be surcharged with the sum of $12,911.88 for the benefit of the creditors of the decedent. The Appellate Division affirmed, and Mrs. Thompson, both individually and as executrix, appealed to this court.

Section 22 of the Domestic Relations Law, so far as now material, is as follows: " A married woman may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his natural life. Where a married woman survives such period or term she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband, except that where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts. * * * A policy of insurance on the life of any person for the benefit of a married woman, is also assignable and may be surrendered to the company issuing the same, by her, or her legal representative, with the written consent of the assured."

Construing this statute, we have held that the wife's right to the insurance fund created by the husband's annual appropriation or investment of his moneys in premiums for insurance upon his life for the benefit of his wife, does not rest upon contract, but upon legislative grant, exempting the fund from the claims of creditors; that the statute is an enabling act and relates to the remedy; that the state has the right to change the exemption before the fund reaches the wife, and, therefore, the proceeds of policies issued before the enactment of the statute are subject to its provisions. (*Kittel* v. *Domeyer*, 175 N. Y. 205.) We further held in that case

that the statute does not authorize an immediate proceeding by a creditor of the husband against the insurance fund without regard to the condition of the estate generally, and that the wife should not be deprived of any portion of the insurance moneys until it is ascertained by administration upon the estate that the other assets will not suffice to satisfy the claims of creditors. We also declared that until such claims are discharged they are a lien upon so much of the insurance money as was purchased by the excess of the annual premium above $500; that the amount thus purchased is, as to the wife, a fund for all the creditors of the deceased and liable primarily for the payment of the husband's debts in preference to the rights of the wife, which are thus postponed as to that part of the insurance to the rights of creditors.

Although the burden was upon the creditors of showing what proportion of the insurance moneys received by Mrs. Thompson was purchased by the excess of the annual premium above $500, " actually paid annually out of" her " husband's property," they failed to show this as to two out of the seven premiums. Still the surrogate, for some reason that we cannot discover, held that the portion of such moneys purchased by the excess of each of the two premiums not paid by the husband or out of his property was liable for his debts the same as the portion of the excess actually paid for out of his property.

As the jurisdiction of the surrogate to try the issue is challenged, that question should be first determined. A surrogate, meaning literally a substitute, or one who acts for another, from the earliest times has been an officer of limited jurisdiction. Originally in England he was the bishop's chancellor, and presided for him in the diocesan court. In colonial times he was the delegate or substitute of the governor, and acting for him admitted wills to probate. Shortly after the Revolution statutes were passed which cautiously extended his powers by bringing other subjects within his jurisdiction. (2 Laws of New York [Jones & Varick's edition],

71; 1 Greenleaf's Laws, 238; 3 ib. 391; L. 1799, p. 724; 1 Webster's Laws, pp. 317, 325; 3 ib. 158, 316; 5 ib. 138; L. 1813, p. 139; L. 1819, p. 215; L. 1823, p. 62.) The Revised Statutes defined and to some extent enlarged his powers, but care was taken to prevent him, " under pretense of incidental powers or constructive authority," from exercising "any jurisdiction whatever not expressly given by some statute of the State." (2 R. S. 220, § 1; *Matter of Brick's Estate,* 15 Abb. Pr. 12, 15.) In 1837 this severe restriction was repealed, and it was held that the effect was to restore the incidental powers possessed by Surrogates' Courts previous to the Revised Statutes. (*Sipperly* v. *Baucus,* 24 N. Y. 46.) By the Judiciary Act of 1847 and by various other statutes, changes were made and defects corrected, but still the jurisdiction of the surrogate was not advanced to any remarkable degree, although his court was finally made a court of record. New subjects were added to his jurisdiction but general powers were carefully withheld from him. Even the codification which went into effect on the first of September, 1880, left the powers of Surrogates' Courts substantially where it found them. (Redfield on Surrogates [6th ed.], introduction, page 20; McClellan's Surrogates' Courts [3d ed.], p. 8.) The codification, as amended from time to time, still governs the subject and is that part of the Code of Civil Procedure known as chapter 15, embracing sections 2472 to 2860, inclusive. The general jurisdiction of the surrogate and his court appears in section 2472 by which, among other things, he is authorized to direct and control the conduct and settle the accounts of executors; to enforce the distribution of the estates of decedents and the payment or delivery by executors of money or other property in their possession belonging to the estate and to administer justice in all matters relating to the affairs of decedents according to the provisions of the statutes relating thereto.

By section 2481 certain incidental powers relating to procedure are conferred upon the surrogate. With respect to any matter not expressly provided for in that section he is

authorized thereby to proceed in all matters subject to the cognizance of his court, according to the course and practice of a court having by the common law jurisdiction of such matters except as otherwise prescribed by statute, and to exercise such incidental powers as are necessary to carry into effect powers expressly conferred.

By section 2596, which relates to the liability of sureties for moneys received by a person to whom letters have been issued, it is provided that such person is liable for money or personal property of the estate which was in his hands or under his control when his letters were issued in whatever capacity it was received by him or came under his control.

Section 2731, the remaining section relied upon to sustain the jurisdiction of the surrogate, provides that where a contest arises between the accounting parties and any of the other parties respecting property alleged to belong to the estate, but to which the accounting party lays claim, either individually or as the representative of the estate, or respecting a debt alleged to be due by the accounting party to the decedent, " the contest must, except where the claim is made in a representative capacity, in which case it may, be tried and determined in the same manner as any other issue arising in the surrogate's court."

The amount of insurance purchased by the excess of premiums paid out of the husband's property did not belong to him in his lifetime and formed no part of his estate after his death. The premiums paid by him did not constitute a debt against his wife in favor of himself or his estate. The proceeds of the policy were not assets and could not be included in the inventory. (Code Civ. Pro. § 2712.) He never owned any part of the policy which belonged wholly to his wife, but owing to the statute the portion purchased by the excess of premiums was liable for his debts. The statute does not make it a part of his estate nor provide that it shall be his property, even as to creditors, but directs that the fund itself shall be " primarily," that is, first in order of payment, liable for his debts. The liability is owing wholly to the com-

mand of the legislature. Like the exemption in favor of the wife it rests entirely "upon legislative grant." `(Kittel v. Domeyer, supra.)` The husband had no legal or equitable interest in the policy, but, as he died insolvent, the statute imposed a lien upon the proceeds thereof for the benefit of his creditors. If his wife had died before the policy was paid, the proceeds would have gone to her personal representatives, not to his, although the excess would still be subject to the claims of his creditors. The fund was liable for his debts without proof of fraud and independent of motive, simply because the statute said so. The liability does not rest on the common law, but, as was said with reference to the individual liability of stockholders of a state bank for its debts as provided by the Banking Law, "is purely statutory." (*Hirshfeld* v. *Fitzgerald,* 157 N. Y. 166, 185.)

While the tendency of recent legislation has been in the direction of enlarging the powers of the surrogate, he has not yet been given the broad powers of a court of equity which were necessary to enforce the liability in question. (*Matter of Randall,* 152 N. Y. 508 ; *Matter of Walker,* 136 N. Y. 20 ; *Sanders* v. *Soutter,* 126 N. Y. 193 ; *Matter of Wagner,* 119 N. Y. 28 ; *Bevan* v. *Cooper,* 72 N. Y. 317 ; *Stilwell* v. *Carpenter,* 59 N. Y. 414 ; *S. C.,* 62 N. Y. 639 ; *Matter of Bunting,* 98 App. Div. 122 ; *Matter of Schaefer,* 65 App. Div. 378 ; 171 N. Y. 686 ; *Matter of Kellogg,* 39 Hun, 275 ; 104 N. Y. 648.) We have repeatedly held that the surrogate has no jurisdiction except such as is expressly or by necessary implication conferred by statute. (*Riggs* v. *Cragg,* 89 N. Y. 479 ; *Matter of Bolton,* 159 N. Y. 134.)

The expression "property alleged to belong to the estate," as used in section 2731, means property which is "deemed assets," as defined in section 2712, and which may be inventoried under section 2714. The allegation that the insurance moneys were property of the estate did not give the surrogate jurisdiction to try the question of title or to enforce the lien any more than if a similar allegation had been made with reference to real estate, or to personal property fraudu-

lently transferred, or to the income from a trust fund in excess of the amount necessary to support the beneficiary and the like. Such questions are still withheld from the Surrogate's Court and when the legislature intends to extend its jurisdiction to those subjects it is safe to assume that it will do so in express terms and not leave it to be inferred from vague and indefinite expressions.

The issue tried by the surrogate was whether, as between Ella A. Thompson, individually, and the creditors of her husband, any part of the proceeds of the policy was charged with a statutory lien in favor of his creditors. The issue did not arise between the executrix and the creditors. The fund was in the hands of Mrs. Thompson as an individual only and a decree of a court of equity was necessary before it could be taken out of her hands by the creditors. The fact that she was executrix did not change the issue, although that accident is the only foundation for the claim that the surrogate had jurisdiction. The insurance moneys were not general assets of the estate. No part could be disposed of under the Statute of Distributions or used for the expenses of administration. They constituted a special fund created by statute for a special purpose and could be applied on the claims of creditors only after a decree of a court of equity.

The orderly course of procedure, as adopted in *Hirshfeld* v. *Fitzgerald* (*supra*), is by a representative action to establish and enforce the lien, after the assets of the estate have been exhausted and the amount required to pay the remainder of the husband's debts has been established by a decree of the surrogate. Distribution may doubtless be made in the action brought for that purpose and circuity thus avoided. No part of the fund is applicable to the purposes of general administration, as it is liable for debts only, and is held as a separate fund, devoted exclusively to the payment of the deficiency arising after all the assets of the estate have been applied upon the debts, while the surplus, if any, is to be returned to the widow. (*Kittel* v. *Domeyer, supra*.)

We think that the order of the Appellate Division and the

decree of the surrogate should be reversed, with costs to the appellant in this court and in the Appellate Division, and that the proceeding should be remitted to the surrogate for the purpose of establishing the exact amount of the deficit so that the creditors can take such further action as they may be advised.

CULLEN, Ch. J., O'BRIEN, HAIGHT, WERNER and HISCOCK, JJ., concur; WILLARD BARTLETT, J., not sitting.

Ordered accordingly.