EDWARD F. ADDISS and Others, Plaintiffs, *v.* ELSA RAYNOR SELIG, Defendant.

Supreme Court, New York County, May 17, 1933.

*George Lion Cohen* [*William Radner* of counsel], for the plaintiffs.

*Goldsmith, Jackson & Brock* [*Osmond K. Fraenkel* of counsel], for the defendant.

*Albert Hirst* [*Morris A. Marks* on the brief], for New York State Life Underwriters Association, *amicus curiœ.*

SHIENTAG, J.   The plaintiffs bring this action on behalf of themselves and all other creditors of Arthur L. Selig, deceased, under the provisions of section 52 of the Domestic Relations Law, to reach that portion of the insurance on the life of Selig received by his widow as beneficiary, which was purchased by premiums in excess of $500 a year paid by the insured with his own funds.

On November 6, 1924, Selig made and delivered to Morton H. Meinhard twenty-five promissory notes, each in the sum of $1,000, each bearing the date of delivery and payable annually thereafter

over a period of twenty-five years. The first five notes were paid, the last payment having been made on November 6, 1929. Selig died in March, 1930. Before March 31, 1927, Selig had caused his life to be insured in the sum of $155,000, naming his wife, the defendant herein, as beneficiary. The premiums for this insurance, amounting to a sum largely in excess of $500 per annum, were paid by Selig out of his own funds. Although the insured reserved the right to change the beneficiary, he never exercised that privilege, and upon his death the widow received the entire net proceeds of the policies, amounting to a sum in excess of $105,000. Selig was insolvent at the time of his death and for several years prior thereto. After Selig's death, Meinhard, the payee of the notes, passed away. The latter's executors, the plaintiffs herein, filed a claim against Selig's estate for the balance due on the notes, the sum of $20,000 and interest, but no part thereof has been paid. We are not here concerned with an action to recover payments of premiums made in fraud of creditors. Nor is this an action to recover the amount of the cash surrender value of the policies in the lifetime of the insured; indeed, the complaint fails to allege that the policies then had any cash surrender value.

The question presented on this motion to dismiss the complaint is whether section 55-a of the Insurance Law, which became effective March 31, 1927, applies to a creditor whose claim arose prior to that date, although the policies matured and were paid thereafter.

Under section 52 of the Domestic Relations Law, in effect at the time the indebtedness was incurred, a married woman was entitled to receive the proceeds of insurance on her husband's life, in which she was designated as beneficiary, as her private property, free from the claims of her husband's creditors or representatives, except that " where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts."

Section 55-a of the Insurance Law, which became effective after the indebtedness was incurred, but before the policies were payable in consequence of the death of the insured, provides in substance as follows: " If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life * * * in favor of a person other than himself * * * the lawful beneficiary or assignee thereof * * * shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same whether or not the right to change the beneficiary is reserved or permitted, * * * provided that * * * the amount of any premiums for said

insurance paid with intent to defraud creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy."

Under this statute " the rights of creditors in the proceeds of such policies are now confined to the amount of the premiums which may have been paid by the insured in fraud of his creditors." ( *U. S. Mortgage & Trust Co.* v. *Ruggles*, 258 N. Y. 32, 39.)

The defendant moves to dismiss the complaint for insufficiency, upon the ground that section 55-a of the Insurance Law applies; that it governs not alone policies theretofore issued but claims of creditors theretofore accruing, where the insured's death has occurred after the effective date of the new statute; and that such construction is not in conflict with the provision of the Federal Constitution that no State shall pass any " law impairing the obligation of contracts." (Art. 1, § 10.)

There will first be considered the question of statutory interpretation, which is separate and distinct from that of constitutional limitation, although, necessarily, the two frequently overlap.

Section 52 of the Domestic Relations Law had its origin in chapter 80 of the Laws of 1840, which was an enabling act removing doubt with respect to wives having an insurable interest in the lives of their husbands because of the common-law disabilities of married women, and permitting them to insure such lives for their own benefit, with the proviso, in 1858, that the husband's creditors could recover premiums paid by him in excess of $300 a year, increased to $500 in 1870, and changed in 1896 to the insurance earned by premiums paid by the husband in excess of $500 per annum. (Laws of 1840, chap. 80; Laws of 1858, chap. 187; Laws of 1870, chap. 277; Laws of 1896, chap. 272.)

By the passage of the Married Woman's Property Act of 1848, the common-law disabilities of married women were in general removed. (Laws of 1848, chap. 200.)

What, therefore, originated as a measure to create rights in a wife which it was thought she did not possess under the common law, has, as a result of changed conditions resulting from the legal emancipation of married women, " operated as a limitation upon the right of a husband to make, in favor of his wife, the same provision which he might make for others having a lesser claim upon him." (*Chatham Phenix National Bank* v. *Crosney*, 251 N. Y. 189, 194.)

Intended for the purpose of creating rights in a wife, these statutes " under changed conditions resulted in creditors having rights against a wife which they would not otherwise possess." (*Chatham Phenix National Bank* v. *Crosney*, *supra*, p. 194.)

By the enactment of section 55-a of the Insurance Law in 1927, the Legislature finally remedied this unjust and " anomalous sur-

vival of the common law of married women by giving the wife the same rights to enforce contracts with insurance companies for insurance on her husband's life as she has to enforce her contracts generally." ( *United States Mortgage & Trust Co.* v. *Ruggles,* 258 N. Y. 32, 39.) It was the final step in the legal emancipation of married women with respect to such life insurance contracts.

Had the insurance policies now in question been made payable to the brother or sister of the insured, creditors at no time would have had the right to follow the proceeds of the policies, regardless of the insolvency of the insured, or of the amount of premiums, or who paid them. Their only remedy would have been to recover premiums paid by the insured in fraud of his creditors. The new Insurance Law is not only a statutory recognition that a man's obligations to his wife are not inferior to his obligations to commercial creditors, but that such creditors have no greater rights in the proceeds of policies in which the wife is designated as beneficiary than they have where any other person is so named. It is true that while the new statute covers policies " heretofore or hereafter issued " it is not so specific in connection with creditors. It refers to creditors generally. The Legislature was not concerned with safeguarding the rights of any particular class of creditors; it made no reservation on this score; it was concerned with granting to the wife the fullest measure of relief from the vestigial restriction which had its origin in an older law based upon social institutions now outworn. There was an anachronism in the law, unreasonable and unconscionable in its operation, and this the Legislature intended to remove.

Having in mind the reasons leading to the enactment of section 55-a, it should, in line with the policy heretofore pursued by the courts, receive a liberal construction. It is a remedial statute designed to correct existing conditions. The purpose of the Legislature was to afford the fullest possible protection to the wife; its design was to have the provisions of the new statute supersede those of the old. That purpose and design should be made effective, save only where to do so would conflict with constitutional limitations. The *Crosney* case is at least authority for this proposition. Before taking up the constitutional question involved, it would be well to consider the status of the husband, wife and creditor of the former, under section 52 of the Domestic Relations Law. In dealing with that section and its predecessors the Court of Appeals has said: " The amount of insurance purchased by the excess of premiums paid out of the husband's property did not belong to him in his lifetime and formed no part of his estate after his death. The premiums paid by him did not constitute a debt

against his wife in favor of himself or his estate. The proceeds of the policy were not assets and could not be included in the inventory. * * * He never owned any part of the policy which belonged wholly to his wife, but owing to the statute the portion purchased by the excess of premiums was liable for his debts. The statute does not make. it a part of his estate nor provide that it shall be his property, even as to creditors, but directs that the fund itself shall be ' primarily,' that is, first in order of payment, liable for his debts. The liability is owing wholly to the command of the Legislature, like the exemption in favor of the wife it rests entirely ' upon legislative grant.' * * * The husband had no legal or equitable interest in the policy, but, as he died insolvent, the statute imposed a lien upon the proceeds thereof for the benefit of his creditors. If his wife had died before the policy was paid, the proceeds would have gone to her personal representatives, not to his, although the excess would still be subject to the claims of his creditors. The fund was liable for his debts without proof of fraud and independent of motive, simply because the statute said so. The liability does,:not rest on the common law, but, as was said with reference to the individual liability of stockholders of a State bank for its debts as provided by the Banking Law, ' is purely statutory.' " (Matter of Thompson, 184 N. Y. 36, 43.)

In the very recent case of Anderson v. Northwestern Mut. L. Ins. Co. (261 N. Y. 450) the Court of Appeals reiterated its holding that " the wife under section 52 of the Domestic Relations Law was the owner or holder of the policy."

In Matter of Thompson (supra) the court said: " Construing this statute, we have held that the wife's right to the insurance fund created by the husband's annual appropriation or investment of his moneys in premiums for insurance upon his life for the benefit of his wife, does not rest upon contract, but upon legislative grant, exempting the fund from the claims of creditors; that the statute is an enabling act and relates to the remedy; · that the State has the right to change the exemption before the fund reaches the wife, and, therefore, the proceeds of policies issued before the enactment of the statute are subject to its provisions " (p. 40). (See Kittel v. Domeyer, 175 N. Y. 205.)

In Baron v. Brummer (100 N. Y. 372, 377) it was held that " The statutes which relate to the subject, and which amend the original act, are mere enabling laws and relate only to the remedy. They are, therefore, constitutional and valid, so far as they affect the obligation of the contract."

In the Ruggles Case (supra), as recently as 1932, the court said: " Under the law of New York, the respective rights of the wife

and the husband's creditors are ' purely statutory ' and rest upon ' legislative grant ' " (p. 41).

The creditors' right to reach the proceeds of the policies, in the hands of the beneficiary, is not to be confused with their right through appropriate proceedings to reach the cash surrender value of such policies, in the lifetime of the insured, where the latter reserved the right to change the beneficiary.

Until the enactment of section 55-a of the Insurance Law, it was held that in spite of the fact that the policy was not payable to the bankrupt, the cash surrender value was an asset which passed to the trustee under section 70, subdivision (a), of the Bankruptcy Act,* because the insured had power in consequence of the reservations in the policies to make them payable to himself. (*Cohen* v. *Samuels*, 245 U. S. 50.) In such case the creditor had more than a remedy to reach the property of some person other than his debtor; he had more than an expectant or inchoate right, to reach the proceeds of policies, as and when paid to the beneficiary; he had a right to an asset of his debtor, the insured, which was immediately available.

The Bankruptcy Act of 1867 made no special provision for life insurance policies. The section providing for passing of the assets of the bankrupt contained the broad language " all the estate real and personal." Under that act it was held that insurance upon the life of the bankrupt vested in the bankrupt estate only to the extent of its cash surrender value at the time of the filing of the petition. (*Burlingham* v. *Crouse*, 228 U. S. 459.) Under the present bankruptcy statute, even in the case of a policy payable to the insured or his estate, a bankrupt may continue to hold it free from his creditors if he pays the cash surrender value to the trustees. (Bankruptcy Act, § 70, subd. [a], cl. [5].*) Under this section, policies of life insurance on the life of the bankrupt which do not have a cash surrender value available to the bankrupt, at the time of bankruptcy, do not pass to the trustee in bankruptcy. (*Burlingham* v. *Crouse, supra; Cohen* v. *Samuels*, 245 U. S. 50.) Likewise it has been held that cash surrender value is to be ascertained as of the date when the petition in bankruptcy is filed, and the bankrupt's death between that time and the date of the adjudication of bankruptcy does not make the proceeds of a policy over and above its cash surrender value assets in the hands of the trustee. (*Everett* v. *Judson*, 228 U. S. 474; *Andrews* v. *Partridge*, Id. 479.)

The uniform construction heretofore placed on section 52 of the Domestic Relations Law and its predecessors has been, in effect, that they confer a statutory remedy upon creditors, under certain

---

* U. S. Code, tit. 11, § 110.

conditions, to reach the proceeds of policies not the property of their debtor; that this remedy does not ripen into a right protected against impairment unless and until what was inchoate and contingent has in substance become vested or of present value — in other words, not until the policies were due or paid, or there was a cash surrender value or its equivalent, immediately available as an asset of the insured debtor.

The plaintiffs claim that in so far as section 55-a of the Insurance Law deprives them of any right to the proceeds of the policies accruing to the wife of their debtor, it diminishes the likelihood of collecting the debt and thus impairs the obligation of a contract entered into prior to the passage of the statute.

It is true that the present statute diminishes the likelihood of collecting debts, under certain circumstances, and thus impairs the value of certain contract rights. But this alone does not stamp the statute as unconstitutional, although some dicta to the contrary may be found. As a matter of fact, practically all legislation disturbs certain contractual expectations and strengthens others.

In endeavoring to draw a line between licit and illicit interference with contract rights, if we eliminate, as will be done for the purposes of this decision, the exercise of the police power of the State, consideration should be given to two factors. In the first place, the courts of this State and of the United States have consistently held that legislation which affects remedies, rather than rights, is immune from the constitutional proscription. In the second place, legislation held to impair rights rather than remedies may be constitutional if the rights impaired are contingent or inchoate, rather than vested, particularly if the rights relate to property which does not belong to the debtor.

That the distinction between rights and remedies is, to a great extent, arbitrary has long been recognized. " If these doctrines were *res integræ* the consistency and soundness of the reasoning which maintains a distinction between the contract and the remedy — or, to speak more accurately, between the remedy and the other parts of the contract — might perhaps well be doubted." (*Von Hoffman* v. *City of Quincy*, 71 U. S. 535, 554.) One may find guidance in past decisions which suggest though they do not explain, the use which has been made of the distinction between " right " and " remedy."

" Even the impairment clause permits minor changes, which, though they may somewhat prejudice the creditor's recourse against his debtor, leave him with substantial sanctions. This doctrine

beginning with *Bronson* v. *Kinzie*, 1 How. 311; 11 L. Ed. 143, has been established in many decisions; * * * It has crystalized in the theorem that changes may be made in the remedy, so long as they do not affect the right. It is a general canon of statutory interpretation, though in the end a matter of degree, as to which there can be no rules. The case at bar falls in our opinion upon the side of remedy; by which we mean no more than that the interests affected are too contingent, too remote and too insubstantial to demand protection." (*Matter of Inland Dredging Corp.*, 61 F. [2d] 765, 766, per LEARNED HAND, J.)

Many cases may be cited upholding the constitutionality of retroactive laws which modify, as does section 55-a of the Insurance Law, a procedure or a remedy for collecting a debt without denying the validity of the debt or the right to proceed to judgment thereon. Thus, in *Bronson* v. *Kinzie* (42 U. S. 311, 315) the United States Supreme Court, per TANEY, Ch. J., declared: " undoubtedly, a State may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity." (See, also, *Watson* v. *New York Central R. R. Co.*, 47 N. Y. 157.)

Perhaps the classical example of retroactive legislation uniformly held constitutional, although widely assailed as a complete destruction of the force of contracts, is State legislation abolishing imprisonment for debt. (See *Von Hoffman* v. *City of Quincy*, 71 U. S. 535, 553.) Undoubtedly creditors dealing with individuals who could not be expected to pay debts without the threat of imprisonment were seriously damaged by such legislation, yet established constitutional doctrine regards such damage as *damnum absque injuria*.

The cases in this field reveal that a distinction has traditionally been made between vested and contingent rights. While this distinction has to a certain extent overlapped the distinction between right and remedy, it has justified the legislative abolition of contingent or inchoate interests which can hardly be referred to the category of procedure. Thus it is uniformly held that

a wife's inchoate right of dower may be abolished by legislation which does not compensate the wife. (*Moore* v. *Mayor, etc., of City of New York*, 8 N. Y. 110; *Jennings* v. *Capen*, 321 Ill. 291; *Rumsey* v. *Sullivan*, 166 App. Div. 246; *Randall* v. *Krieger*, 23 Wall. 137; *Ferry* v. *Spokane P. & S. Ry. Co.*, 258 U. S. 314.) The position taken by the courts is that constitutional protection of property rights, as of contract rights in so far as they are today held to be property rights, is not to be unduly extended to tenuous interest that may vanish even without legal interference. (See *Matter of Wentworth*, 230 N. Y. 176, 187; *Stohr* v. *San Francisco Musical Fund Soc.*, 82 Cal. 557.) The right claimed by the present plaintiffs is of this sort; it vanishes the moment the insured debtor changes the beneficiary from the wife to any one else having an insurable interest; it depends for its significance upon the contingency that the wife as beneficiary will survive the husband and that the estate of the latter will be insufficient to pay the claims of creditors. Only upon the happening of these contingencies did section 52 of the Domestic Relations Law offer any aid to a creditor of the insured. If any one may be said to have had a vested interest in the proceeds of the policies it was the wife and not the creditor. (*Whitehead* v. *N. Y. Life Ins. Co.*, 102 N. Y. 143; *Wagner* v. *Thieriot*, 203 App. Div. 757; affd., 236 N. Y. 588.)

Creditors cannot be said to have had any vested rights until the death of the insured; until that time the insured could have deprived plaintiffs of the share in the proceeds of the insurance policies which they now claim, by lapse, by surrender, by change of beneficiary, by assignment, or could have diminished their rights by loans against the policies or have pledged them as collateral for other debts without giving rise to any cause of action in favor of the creditors.

Even if the statute in question be viewed as creating new rights, rather than new remedies for the enforcement of old rights, the rights are not such vested or existing rights as are protected against legislative repeal. The right of the creditor, expectant merely and qualified by the contingencies above enumerated, was qualified also by the contingency that section 52 of the Domestic Relations Law might be repealed before the time to invoke it arrived.

The cases cited by plaintiffs are clearly distinguishable from the instant case. In *United States Mortgage & Trust Co.* v. *Ruggles* (*supra*) the court held that it was not the intention of the Legislature to affect the rights of creditors in the proceeds of policies due or paid prior to the enactment of section 55-a and that " if such was the intention, the Constitution would frustrate it." In

that case, what had been a remedy or an inchoate, contingent right of the creditor had become something of present or immediate value. The creditor's right may be said to have attached to the proceeds of the policy before the new statute went into effect. It may be that technically the creditors' equitable lien did not attach until an action to enforce it was instituted or until the lien was adjudged by the court; but the law had declared that the rights of the creditors should become effective upon the death of the insured or at the time the policy became due and the proceeds paid to the beneficiary. The decision is in harmony with the result reached in the earlier cases of *Baron* v. *Brumner* and *Matter of Thompson* (*supra*).

*Bank of Minden* v. *Clement* (256 U. S. 126) involved a case where the policy was payable to the estate of the insured debtor. The court held that the policy was the property of the insured and the proceeds could not be exempted from the claims of creditors which arose prior to the effective date of the exemption statute. In the present case the policies never were the property of the insured or of his estate. Any property right in them was vested in the wife. It is here contended, and correctly, that creditors have no rights in the property of a person other than the debtor, which will be protected against impairment under the provisions of the Federal Constitution unless their rights in that property vested before the change in the law. The cases of *Matter of Messinger* (29 F. [2d] 158) and *Matter of Sturdevant* (Id. 795) are not decisive of the questions here presented. In those cases it was held that section 55-a of the Insurance Law operated to allow to a bankrupt an exemption of the cash surrender value of policies, issued on his life, in favor of any beneficiary, including the wife, whether or not the right to change the beneficiary was reserved. The courts there decided that such exemption would not apply to existing creditors because that would be an unconstitutional interference with their right to resort to the property of the debtor for the payment of their claims.

Indeed, in the *Messinger* case, the court held in effect that the only exemption to the insured debtor was freedom from compulsion to exercise the reserved power to change the beneficiary. The court said: " The statute does not exempt the bankrupt if he exercises his reserved power to change the beneficiary for his personal advantage, and, indeed, precludes an exemption in such case by saying that the ' beneficiary  *  *  *  *other than the insured* ' shall be entitled to the proceeds and avails. But it plainly does attempt to exempt the ' proceeds and avails,' so far as beneficiaries,

other than the bankrupt, may have an interest in the policy. It does not protect the insured against his creditors, and only seeks to prevent them from affecting the rights of the beneficiaries other than himself. While the insured may still change the beneficiary, and appoint to himself under the reserved power, by reason of the New York Insurance Law, he cannot be compelled to do this, as he would have been prior to the enactment of section 55-a, because, to do so, would deprive the beneficiaries of their interest. Thus there is an allowance of an exemption to the bankrupt to the extent of the right of the trustee to compel him to exercise the reserved power. While the benefit inures directly to the beneficiary, and not to the bankrupt, yet it is an exemption of the bankrupt himself to the extent indicated " (p. 160).

In any event, there is no allegation in this complaint that there was any surrender value to the policies in suit; the action is not brought on any such theory and it is, therefore, unnecessary to discuss it.

The only contract which the creditors had was with the deceased husband, the insured; he was bound by that contract to make available to the satisfaction of their claims any property he had at the time the contract was entered into and any property he subsequently acquired; any legislative attempt to exempt part of such property would, unless justified by the exercise of the police power, be unconstitutional; the policies, however, were never the property of the insured and the proceeds did not exist until after his death. The remedies which the creditors might have had before the enactment of section 55-a of the Insurance Law against the beneficiary under the policies, with whom they had no contract, rested on legislative grant which could be revoked at any time before their rights became vested; that is, before the death of the insured husband.

Section 55-a of the Insurance Law has a valid application to the situation presented in this complaint. The motion to dismiss the complaint for insufficiency is granted, with costs.