UNITED STATES MORTGAGE AND TRUST COMPANY, as Administrator with the Will Annexed of the Estate of EDWIN D. RUGGLES, Deceased, Appellant, *v.* MARY B. RUGGLES et al., Respondents.

(Argued November 18, 1931; decided January 5, 1932.)

**34**

*Carroll G. Walter* and *Edward J. Patterson* for appellant. The policies, at least to the extent of $50,000, face amount, are not Ohio contracts and are not governed by the law of Ohio. (*Northwestern Mut. Life Ins. Co.* v. *McCue*, 223 U. S. 234; *Ætna Life Ins. Co.* v. *Dunken*, 266 U. S. 389; *Gans* v. *Ætna Life Ins. Co.*, 214 N. Y. 326.) The disposition of the proceeds of the policies is governed by the law of New York, even if the policies be Ohio contracts, and no constitutional right of the widow is infringed by applying the New York law to such proceeds. (*New England Mut. Life Ins. Co.* v. *Woodworth*, 111 U. S. 138; *Smith* v. *New York Life Ins. Co.*, 57 Fed. Rep. 133; 67 Fed. Rep. 694; 159 U. S. 262; *Pullman Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Pennoyer* v. *Neff*, 95 U. S. 714; *Lemmon* v. *People*, 20 N. Y. 562; *Sultan of Turkey* v. *Tiryakian*, 162 App. Div. 613; 213 N. Y. 429; *Goetchius* v. *Brightman*, 245 N. Y. 186; *Warner* v. *Jaffray*, 96 N. Y. 248; *Keller* v. *Paine*, 107 N. Y. 83.) No State is bound to give effect to contracts made in another State where to do so would violate its own laws or policy and the right of a State to enforce its own laws and policy with respect to its own citizens and with respect to property within its limits exists even though the effect may be to defeat or impair contract rights obtained elsewhere. (*Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407; *Goetchius* v. *Brightman*, 245 N. Y. 186; *Keller* v. *Paine*, 107 N. Y. 83; *Warner* v. *Jaffray*, 96 N. Y. 248; *Dearing* v. *McKinnon Dash & Hardware Co.*, 165 N. Y. 78; *Green* v. *Van Buskirk*, 5 Wall. 307; 7 Wall. 139; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Walworth*

v. *Harris*, 129 U. S. 355; *Smith* v. *New York Life Ins. Co.*, 57 Fed. Rep. 133; *The Kensington*, 183 U. S. 263; *Bond* v. *Hume*, 243 U. S. 15; *Union Trust Co.* v. *Grosman*, 245 U. S. 412; *Bothwell* v. *Buckbee, Mears Co.*, 275 U. S. 274.) Section 55-a of the Insurance Law was not intended to affect either existing creditors or policies which already had matured. (*Matter of Messinger*, 29 Fed. Rep. [2d] 158; *Bonvillian* v. *Howell*, 237 Fed. Rep. 1015; *Hollenbach* v. *Born*, 238 N. Y. 34; *Rhodes* v. *Sperry & Hutchinson Co.*, 193 N. Y. 223; *Standard C. & M. Corp.* v. *Waugh Chemical Corp.*, 231 N. Y. 51; *Jacobus* v. *Colgate*, 217 N. Y. 235; *Isola* v. *Weber*, 147 N. Y. 329; *O'Reilly* v. *Utah, Nevada & California Stage Co.*, 87 Hun, 406; *Winfree* v. *Northern Pacific Ry. Co.*, 227 U. S. 296; *Shwab* v. *Doyle*, 258 U. S. 529; *United States* v. *Heth*, 3 Cranch, 399; *Twenty Per Cent Cases*, 20 Wall. 179.)

*Charles A. Riegelman* and *Harry F. Mela* for Fidelity and Deposit Company of Maryland, *amicus curiæ*.

*Hiram Thomas* and *Edward A. Craighill, Jr.*, for Mary B. Ruggles, respondent. Section 52 of the Domestic Relations Law gave no rights to creditors of an insured husband unless the insurance contract was made under the authority of that statute and it had no application to insurance contracts made and to be performed in other States. (*Chatham Phenix Nat. Bank* v. *Crosney*, 251 N. Y. 189; *Vanderpoel* v. *Gorman*, 140 N. Y. 563; *Mutual L. Ins. Co.* v. *Cohen*, 179 U. S. 262; *Matter of Thompson*, 184 N. Y. 36; *Dominick* v. *Stern*, 79 Misc. Rep. 271; 157 App. Div. 944; 213 N. Y. 675.) The insurance contracts represented by the policies were made in Ohio and the rights of the parties to the proceeds thereof are governed exclusively by the law of Ohio. (Const. art. VI, § 7; Civ. Prac. Act, §§ 589, 602; *Hearst* v. *N. Y. C. R. R. Co.*, 215 N. Y. 268; *Grulich* v. *Paine*, 231 N. Y. 311; *Equitable L. Ins. Co.* v. *Clements*, 140 U. S. 226; *Mutual L. Ins. Co.* v. *Cohen*, 179 U. S. 262; *Mutual L. Ins. Co.* v. *Hill*, 193

U. S. 551; *Northwestern Mut. L. Ins. Co.* v. *McCue*, 223
U. S. 234; *Ætna L. Ins. Co.* v. *Dunken*, 266 U. S. 389;
*Pool* v. *New England Mut. L. Ins. Co.*, 123 App. Div.
885; *Millard* v. *Broughton*, 177 Mass. 533.) Section 52
of the Domestic Relations Law did not become applicable
to the Ohio contracts by the change of residence of insured
and beneficiary to New York and it could not constitu-
tionally be made applicable to them. (*Ætna Life Ins.
Co.* v. *Dunken*, 266 U. S. 389; *Burns* v. *Burns*, 190 N. Y.
211; *Mullen* v. *Reed*, 64 Conn. 240; *Central Bank of
Washington* v. *Hume*, 128 U. S. 195; *Jones* v. *Ætna Ins.
Co.*, 14 Conn. 501; *Equitable Life Assur. Soc.* v. *McRee*,
75 Fla. 257; *Doss* v. *Campbell*, 19 Ala. 590; *Gluck* v. *Cox*,
90 Ala. 331; *Kirkpatrick* v. *Buford*, 21 Ark. 268; *Allen* v.
*Hightower*, 21 Ark. 316; *Parrott* v. *Nimmo*, 28 Ark. 351;
*State ex rel. Goldsall* v. *Chatham Nat. Bank*, 80 Mo. 626;
*Rice* v. *Shipley*, 159 Mo. 399; *Block* v. *Cross*, 36 Miss.
549; *Elliott* v. *Hawley*, 34 Wash. 585.) If section 52
of the Domestic Relations Law was applicable to the
policies, its provisions upon which the action is based
were repealed by section 55-a of the Insurance Law,
which applied to the proceeds of the policies and deprived
the court of jurisdiction. (*Chatham Phenix Nat. Bank*
v. *Crosney*, 251 N. Y. 189; *People ex rel. Huntington* v.
*Crennan*, 141 N. Y. 239; *McFaddin* v. *Evans-Snider-Buel
Co.*, 185 U. S. 505; *Matter of Anderson*, 178 N. Y. 416;
*Ware* v. *Hylton*, 3 Dallas [U. S.], 199; *Billings* v. *United
States*, 232 U. S. 261; *Morgan* v. *Hedstrom*, 164 N. Y. 224.)

*Edwin F. Valentine* for Northwestern Mutual Life Insur-
ance Company, respondent. The policy contracts issued
by the defendant insurance company are Ohio contracts,
and as the plaintiff has never asked for relief under the
Ohio statutes nor proven compliance therewith it
failed to make out a case. (*Pool* v. *New England Mut.
Life Ins. Co.*, 123 App. Div. 885; *Vanderbeck* v. *Prote.tive
Home Circle*, 98 Misc. Rep. 691; *O'Neill* v. *Massachusetts*

*Benefit Assn.*, 63 Hun, 292; *Northwestern Mut. Life Ins. Co.* v. *McCue*, 223 U. S. 234; *New York Life Ins. Co.* v. *Cravens*, 178 U. S. 389; *Equitable Life Assur. Soc.* v. *Clements*, 140 U. S. 226; *Mutual Life Ins. Co.* v. *Cohen*, 179 U. S. 262; *Mutual Life Ins. Co.* v. *Hill*, 193 U. S. 551; *Ætna Life Ins. Co.* v. *Dunken*, 266 U. S. 389.) The policy contracts issued by the defendant insurance company, being Ohio contracts and to be governed and construed according to the statutes of Ohio, section 52 of the Domestic Relations Law cannot be constitutionally applied to those contracts. (*Ætna Life Ins. Co.* v. *Dunken*, 266 U. S. 389.) Section 52 of the Domestic Relations Law having been repealed by section 55-a of the Insurance Law, the action is not maintainable and the creditors may not obtain any part of the insurance moneys. (*Chatham Phenix Nat. Bank* v. *Crosney*, 251 N. Y. 189.)

POUND, J. Plaintiff, as administrator of the will annexed of Edwin D. Ruggles, deceased, sues the widow of decedent and the defendant insurance company, pursuant to section 52 of the Domestic Relations Law (Cons. Laws, ch. 14), to recover for the benefit of the creditors of decedent such portion of the proceeds of insurance policies on the life of the husband, payable to the wife, as was purchased by annual premiums paid out by the husband in excess of $500 per annum. The amount demanded is upwards of $60,000.

The policies are in two groups, one issued by the Northwestern Mutual Life Insurance Company; the other by Ætna Life Insurance Company. The policies issued by the Northwestern Mutual Life Insurance Company were obtained in Ohio, where insured and his wife then resided, and the first premiums were paid there. They were payable at the company's home office in Wisconsin. The Ætna policies were also issued in Ohio and were payable at the company's home office in Connecticut. Under the laws of Ohio premium payments, not actually

in fraud of creditors, are wholly beyond the reach of creditors.

Ruggles and his wife later changed their residence from Ohio to New York where they remained until he died. Five ten-thousand-dollar Ætna policies were, after they came to New York, split up for convenience into ten five-thousand-dollar policies, not by novation nor by a change in the original contract but by a mere division of the original insurance into smaller policies. The same is true of the Northwestern policies. A change of beneficiary was made, as the policies permitted, but no new contract of insurance was made. The place of contracting was where the policies were delivered to assured. (*Northwestern Mut. Life Ins. Co.* v. *McCue*, 223 U. S. 234.) The contracts of insurance were made in the State of Ohio and are, therefore, Ohio contracts (*Dannhauser* v. *Wallenstein*, 169 N. Y. 199; *Ætna Life Ins. Co.* v. *Dunken*, 266 U. S. 389) and not new contracts as in *Gans* v. *Ætna Life Ins. Co.* (214 N. Y. 326). The laws of Ohio govern the rights created by the policies (*Central Bank of Washington* v. *Hume*, 128 U. S. 195) in matters bearing upon the capacity of the parties to contract and upon the execution, the interpretation and the validity thereof. (*Scudder* v. *Union Nat. Bank*, 91 U. S. 406.)

Section 52 of the Domestic Relations Law provides: " Insurance of husband's life. A married woman may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his natural life. Where a married woman survives such period or term she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband, except, that where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above

five hundred dollars, is primarily liable for the husband's debts."

The exception in this section was repealed by implication by section 55-a of the Insurance Law (Laws of 1927, ch. 468, in effect March 31, 1927; Cons. Laws, ch. 28). The rights of creditors in the proceeds of such policies are now confined to the amount of the premiums which may have been paid by the insured in fraud of his creditors. (*Chatham Phenix Nat. Bank* v. *Crosney*, 251 N. Y. 189.) Insured died March 13, 1926, prior to the enactment of section 55-a. The rights of the plaintiff were not affected by the repeal, as nothing indicates that it was the intention of the Legislature to prejudice the rights of creditors in the proceeds of policies due or paid prior to the new enactment (*Hollenbach* v. *Born*, 238 N. Y. 34), and if such was the intention the Constitution would frustrate it. (*Bank of Minden* v. *Clement*, 256 U. S. 126.)

Judge LEHMAN in the *Crosney* case has indicated how the statute, which had its origin in Laws of 1840, chapter 80, prior to the Married Women's Acts of 1848, " intended to create rights in a wife, under changed conditions, resulted in creditors having rights against a wife which they would not otherwise possess." (*Chatham Phenix Nat. Bank* v. *Crosney, supra*, 194.) Once an extension of the right to contract, it became a limitation thereon. The common law saw difficulties in the way of procuring insurance on the life of the husband. The statute granted that right for the benefit of the wife with regard, however, to the conflicting rights of wife and creditors. Without the statute, the insurance money payable to the wife might not, in the year 1840, have been kept from the creditors. At least it would seem that on some such theory the remedial statute was passed. (*Barry* v. *Equitable Life Assur. Soc.*, 59 N. Y. 587, 593.)

The Legislature has at length remedied this anomalous survival of the common law of married women by giving the wife the same rights to enforce contracts with insur-

ance companies for insurance on her husband's life as she has to enforce her contracts generally. (Dom. Rel. Law, § 51.) No policy of the forum is offended which might subject the proceeds of foreign policies to the State law or regulate the enforcement of rights against the proceeds of policies in the hands of the beneficiary. (*Straus & Co.* v. *Canadian Pac. Ry. Co.*, 254 N. Y. 407, 414; *Bond* v. *Hume*, 243 U. S. 15, 21, 22; *Bothwell* v. *Buckbee, Mears Co.*, 275 U. S. 274.) Comity and good morals alike permit the widow to enforce and maintain in New York her contractual rights, valid where created, as freely as if she were single. She comes under the rule which provides that, in the absence of fraud or a statutory provision to the contrary affecting the contract, any life insurance effected in favor of another shall be payable to the beneficiary as against the creditors and personal representatives of the person effecting the same. (*Central Bank of Washington* v. *Hume, supra.*)

Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, are governed by the *lex fori* and depend upon the law of the place where the suit is brought. (*Scudder* v. *Union Nat. Bank, supra.*) With such remedial matters we are not concerned. So also one who removes his own personal property into the State thereby submits to the laws of the State concerning its transfer. (*Dearing* v. *McKinnon Dash & Hardware Co.*, 165 N. Y. 78, 87; *Goetschius* v. *Brightman*, 245 N. Y. 186, 191.) But money paid on a foreign insurance policy, unfettered by statutory restrictions at the place of contract, is when brought into the State, subject, like any other personal property owned here, only to the general laws of the State as to rights of creditors, and is free from local limitations on the right to contract. The State may not constitutionally regulate or interfere with the acts of foreign corporations outside its limits nor with the liberty of parties to take out contracts of insurance wherever they desire and collect

the proceeds thereof. (*Allgeyer* v. *Louisiana*, 165 U. S. 578; *St. Louis Cotton Compress Co. v. Arkansas*, 260 U. S. 346.)

The conclusion follows that the New York statute, in placing a limitation upon the power of insurance companies to write policies payable to the wife, could reach only business transacted within the State; contracts made within the State. Indeed, we find in the statute no intention to prescribe limitations upon the contracts even of a New York corporation made outside the State. The statute has no extra-territorial effect. (*Mutual Life Ins. Co.* v. *Cohen*, 179 U. S. 262, 265, 266.) "Can it be supposed that the legislature had in mind a foreign corporation and intended to assume a jurisdiction to declare such an act [*i. e.*, an assignment for the benefit of creditors] even when done outside this state * * * to be void and of no effect? This cannot be supposed, for we cannot impute to the legislature such ignorance upon the subject of its inability to give extra-territorial effect to its own laws." (*Vanderpoel* v. *Gorham*, 140 N. Y. 563, 570.) Neither can it be supposed that the Legislature intended to incorporate the local statute into contracts made outside the State by residents of this State. Under the law of New York, the respective rights of the wife and the husband's creditors are "purely statutory" and rest upon "legislative grant." (*Matter of Thompson*, 184 N. Y. 36, 43–45.) As the section applies only to New York contracts, it does not attach to the proceeds of insurance contracts made in States which contain no such limitation on the power of the parties to contract. Payment of premiums in New York does not change the rights of the parties. The policies constitute entire contracts for which the first premium is the consideration and the other payments are merely conditions. (*Northwestern Mut. Life Ins. Co.* v. *McCue, supra; Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 N. Y.

610, 618.) No right of husband's creditors attaches to the policies affected by this litigation or to the proceeds thereof.

The conclusion reached renders it unnecessary to say whether an action under the statute would lie against the defendant insurance company which had paid the policies to Mrs. Ruggles according to their terms (*Kittel* v. *Domeyer*, 175 N. Y. 205; *Matter of Thompson, supra*) or against the wife alone after administration upon the husband's estate.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.