## In re RUBIN.

District Court, S. D. New York.
Aug. 5, 1939.

Morris Ehrlich, of New York City, for petitioner.

Benjamin Siegel, of New York City, for trustee.

HULBERT, District Judge.

On August 11, 1937, the bankrupt, Jacob Rubin, made an assignment for the benefit of his creditors, among whom was William Federman, doing business under the firm name and style of L. Federman & Sons, to whom he owed approximately $2,500, which indebtedness was then past due.

Previous to August 11, 1937, Federman received six checks drawn by the bankrupt to apply on account of said indebtedness, all of which were dishonored by the bank upon which they were drawn and returned marked "Not Sufficient Funds".

On October 19, 1937, an involuntary petition in bankruptcy was filed against the bankrupt and an order of adjudication was entered thereon Nov. 9, 1937.

On Nov. 22, 1937, Federman filed a claim for $1,965; a statement of the bankrupt's account attached thereto indicated a credit on August 11, 1937, of $503.47.

It appears that the bankrupt carried three policies of insurance issued to him by the Prudential Insurance Company of America. His mother was designated as the beneficiary in one policy and his sister in the other two, with the right reserved to the insured to change the beneficiary at will. A day or two before the assignment for the benefit of creditors, the bankrupt delivered the policies in question to Federman, and on August 11th, signed a letter reading as follows:

"Aug. 11, 1937.

"Mr. Eichengreen
"J. A. McNulty Agency,
"Prudential Ins. Co. of America
"1501 Broadway
"New York City
"Re: Policies Nos. 2308856, 3860621, 4961667

"Dear Mr. Eichengreen:

"I hereby authorize you to have the checks, for the proceeds of the maximum loan values, of the above number policies, made payable to L. Federman & Sons, 462 Broome St., New York City.

"Thanking you to give this your prompt attention, I am

"Yours very truly,
"Jacob Rubin."

The Prudential Insurance Company of America made a loan for the cash surrender value of the policies and issued three checks, two dated August 18, and one dated August 23rd, aggregating $503.47, payable to the order of the bankrupt, but which were delivered to Federman. These checks were brought by Federman to the bankrupt and upon his endorsement thereof, were deposited in Federman's bank account.

The second objection of the Trustee alleges the assignment within four months of bankruptcy by the bankrupt of his cash surrender value in said insurance policies in payment of an alleged antecedent indebtedness at a time when the bankrupt was insolvent, which the assignee knew, or had reasonable cause to believe to be true, and prays for an order adjudging the assignment to be a voidable preference and that the proof of debt be disallowed until such preferential payment should be returned to the Trustee.

The Referee in Bankruptcy in charge of this proceeding, after an extended hearing, said: "The claimant urges that the evidence is insufficient to prove that the creditor had knowledge or reasonable cause to believe that the bankrupt was insolvent and that he was being preferred, but in the opinion of the undersigned the evidence shows facts warranting the conclusion that the creditor knew or had reasonable cause to believe that the bankrupt was insolvent at the time of the transfer * * *", and thereupon made an order disallowing Federman's claim until the alleged preferential payment should be returned to the Trustee.

It is quite apparent from an examination of the record that the Referee proceeded upon the theory that Federman received a preference if the checks from the Prudential were received with knowledge or reasonable cause to believe that Rubin was insolvent.

Federman has petitioned a review of this order.

The Referee also made Findings of Fact, without notice to the petitioner. The 14th Finding of Fact, reads: "14. Said letter and the delivery of said policies were not intended to, and did not constitute an assignment of said policies to said creditor."

■ Regardless of the Findings, I am bound to accept the Referee's determination that Federman knew the bankrupt was insolvent when the letter of Aug. 11, 1937, and the policies, were delivered to him. Upon the proof the Referee could not have found otherwise. But the evidence does not support the Findings of Fact, and particularly item 14, if I were disposed to accept them.

However, the question presented for consideration and determination is the construction of Section 55-a of the Insurance Law of the State of New York, Consol.Laws, c. 28 (Laws of 1927, Chap. 468), which reads as follows: "If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person."

Counsel for the Trustee contends that the policy of insurance is not exempt but only the proceeds thereof providing that such proceeds are payable to the lawful beneficiary or to the assignee of the policy, and any payment made for the "personal advantage" of the bankrupt is not exempt, and that the money received by the creditor was not the proceeds of the policy but merely a loan.

According to the language of the statute, "* * * if a policy of life insurance is assigned *or in any way made payable* to any such person, the lawful beneficiary or assignee thereof * * * shall be entitled to its proceeds *and avails* against the creditors and representatives of the insured * * *". (Italics mine.)

■ As pointed out by Judge Woolsey, In Re Canariate, D.C., 6 F.Supp. 692, "exemption laws involve state considerations solely * * *".

The New York Court of Appeals had before it and quite thoroughly considered Section 55-a of the Insurance Law in the case of United States Mortgage & Trust Company v. Ruggles, 258 N.Y. 32, 179 N.E. 250, 79 A.L.R. 802. Judge Pound (afterwards Chief Judge of that Court) said, 258 N.Y. at page 39, 179 N.E. at page 252, 79 A.L.R. 802: "The rights of creditors in the proceeds of such policies are now confined to the amount of the premiums which may have been paid by the insured in fraud of his creditors. Chatham-Phenix Nat. Bank v. Crosney, 251 N.Y. 189, 167 N.E. 217."

■ The evidence in this case satisfies me there was an assignment to the creditor and that he received such "avails" of the policies as could be secured under its terms. The money thus received being exempt, the bankrupt's estate was not diminished and the creditors have sustained no loss. The misfortune arising out of the situation is that of the beneficiary, the bankrupt's mother and sister, and even they have no legal cause of complaint.

It is argued by the Trustee that the creditor obtained the alleged preference in question by threats. That might constitute a right of action by the bankrupt to recover from the creditor. If such were the fact, reprehensible as the conduct of the creditor might have been, it should not affect the determination of the issue raised by the Trustee's objections to the creditor's claim.

As a matter of fact, the bankrupt testified under examination by the Trustee's attorney, before the Referee:

"Q: And when you gave these policies of insurance to Mr. Federman, what did you tell him? A. The reason I gave it to him is this; I happened to give him quite a few checks and I felt really ashamed of myself that all these checks came back and I didn't know how to get money and I went to work and assigned all my policies to him, whatever I had left at the time.

"Q. Did you tell him you were going to apply for a loan on the policies? A. I told him I would assign the policies and he could collect whatever the value of the policies was. I didn't pick out any amount at all. I don't know what it was myself."

Certainly the creditor cannot be penalized in this proceeding for having induced the bankrupt to pay over to him monies which the bankrupt might have retained for himself without obligation to his creditors, or ultimately, for his mother and sister.

Petition is sustained and the order of the Referee is reversed. Settle order on notice.