**Donna Joan ZOGG, Plaintiff-Appellee,**

v.

**PENN MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellant.**

**No. 171, Docket 25869.**

United States Court of Appeals
Second Circuit.

Argued Jan. 15, 1960.

Decided April 5, 1960.

Walter J. Holzka, of Winthrop, Stimson, Putnam & Roberts, New York City, for defendant-appellant.

Arthur B. Sheehan, New York City (Patrick G. Finegan, New York City, on the brief), for plaintiff-appellee.

Before CLARK, HINCKS, and WATERMAN, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a plaintiff's judgment in an action by the beneficiary to recover the face amount of a policy of life insurance issued by defendant. The

insured, a resident of New York, applied for the policy and paid the first premium thereon in Massachusetts. But there was conflicting evidence as to whether the policy had been delivered to the insured in Massachusetts or had been mailed to his residence in New York. A provision of the policy limited death benefits to a return of premiums in the event of the insured's suicide, while sane or insane, within two years of the date of issue. Since the insured did so commit suicide, the only question involves the effectiveness of the limitation. The court below applied § 155 of the N.Y. Insurance Law,[1] which has been interpreted as rendering the restriction void where the insured commits suicide while insane. Franklin v. John Hancock Mut. Life Ins. Co., 298 N.Y. 81, 80 N.E.2d 746. The case was submitted to the jury for a verdict upon special interrogatories, and it was found that the policy had been mailed to the insured in New York and that the insured had been insane at the time he committed suicide.[2] Judgment for plaintiff was directed to be entered upon this verdict.

As jurisdiction is grounded upon diversity of citizenship of the parties, familiar principles require that we decide the issue here in accordance with the substantive law, including the conflict-of-laws rules, which would be applied by a court of the State of New York. Erie R. Co. v. Tompkins, 304 U.S.

1. N.Y. Insurance Law § 155 provides:
"2. No policy of life insurance delivered or issued for delivery in this state shall contain any provision which excludes or restricts liability in the event of death caused in a certain specified manner, except the following provisions, or provisions which in the opinion of the superintendent are substantially the same or more favorable to policyholders.

"Provisions excluding or restricting coverage in the event of death:

\* \* \* \* \*

"(d) As a result of suicide within two years from the date of issue of the policy."

2. The following questions were submitted to the jury:

Question No. 1: "Was the life insurance policy delivered personally to the in-

sured, Edward W. Zogg, by an agent of the defendant at Boston, Massachusetts?"

Question No. 2: "Did the insured, after receiving the insurance policy at Boston, Massachusetts, mail the insurance policy in an envelope addressed to himself at his home on McClellan Street, Bronx County, New York?"

Question No. 3: "Was the insurance policy delivered by an agent of the defendant to the insured, Edward W. Zogg, by mail, in an envelope addressed to the insured at his home on McClellan Street, Bronx County, New York?"

Question No. 4: "Was the insured insane at the time he committed suicide on February 12, 1957?"

The jury answered "No" to Questions 1 and 2, and "Yes" to Questions 3 and 4.

64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Sampson v. Channell, 1 Cir., 110 F.2d 754, 128 A.L.R. 394, certiorari denied Channell v. Sampson, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415.

■ Defendant's contention is that the New York statute should not have been applied to the transaction here involved. Its position is that the applicable substantive law is that of Massachusetts, under which the suicide provision is enforceable in accordance with its terms. Moore v. Northwestern Mut. Life Ins. Co., 192 Mass. 468, 78 N.E. 488. This assertion is based upon the fact that a so-called "binding receipt" was delivered to the insured in Massachusetts at the time he executed Part I of the application and paid the first premium.[3] It is urged that as the *locus contractus* its law should be applied. Although there is considerable conflict in New York, as elsewhere, as to the effect of various types of binding receipts, these decisions involve the situation where death or a change in the applicant's condition occurs between the date of the receipt and the date when the policy, if any, is delivered. See Comment, 63 Yale L.J. 523, 525–528 (1954); see also Comment, 44 Yale L.J. 1223 (1935). The issue has thus involved the enforceability of the "binder" as against the insurer, rather than the enforceability as against the insured of terms of the policy of which he may not have been aware until its actual receipt. But without pursuing this distinction, we assume, *arguendo*, that a complete and binding insurance agreement was formed in Massachusetts. See Gaunt v. John Hancock Mut. Life Ins. Co., 2 Cir., 160 F.2d 599, certiorari denied 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858; Ransom v. Penn Mut. Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633, noted in 7 Stan.L.Rev. 292 (1955) (construing identical language with that here present).

■ The question remains, however, whether N.Y. Insurance Law § 155 is nevertheless applicable. Defendant's position is that formation of the contract in Massachusetts requires a reference to the law of that state as the *locus contractus*. We need not consider the extent to which this choice-of-law rule may today be considered as generally applicable in the contract field.[4] It need only be noted that in the area of adhesion contracts, particularly in the insurance field, any generalization as to a majority, or even preferable, view is apt to constitute

3. Pertinent portions of the receipt herein involved are as follows:

"* * * Insurance (subject to the terms of the policy applied for) shall be in force from the date of Part I or Part II of the application, whichever is the later, if (1) the amount paid in exchange for this receipt is the amount of the full first premium for the policy applied for and this receipt is signed by the Company's agent and delivered at the time Part I of the application is signed and (2) on the date of Part I or Part II, whichever is the later, the Proposed Insured is acceptable, as later determined by the Company, under the Company's rules for insurance on the plan, at the premium rate and for the amount applied for. Such determination shall be made without regard to any change occurring after such date in health or other facts relating to the Proposed Insured. If the Company shall determine that the Proposed Insured was not so acceptable or if the above conditions are not otherwise met, the payment received shall be returned upon surrender of this receipt."

The insured completed the medical portion (Part II) of the application the day following execution of Part I.

4. This question has been the subject of continuing debate among the commentators. Compare Ehrenzweig, Contracts in the Conflict of Laws, 59 Col.L.Rev. 973 (1959), with Restatement, Conflict of Laws § 332 (1934). See also Cook, Contracts and the Conflict of Laws, 31 Ill.L. Rev. 143 (1936); Lorenzen, Validity and Effects of Contracts in the Conflict of Laws, 30 Yale L.J. 565 (1921), 31 Yale L.J. 53 (1921).

a misleading oversimplification.[5] Cf. Ehrenzweig, Contracts in the Conflict of Laws, 59 Col.L.Rev. 973, 986, 1014 (1959). Decisions involving the applicability of the insurance laws of the several states to transactions including foreign elements appear irreconcilable in terms of any uniform conflict-of-laws theory. If any trend is discernible in these cases, it is that of a forum to apply its own law to adhesion contracts of insurance entered into by its residents. See Lenhoff, Conflict Avoidance in Insurance, 21 Law & Contemp. Prob. 549, 551–552 (1956).

Thus we find the considerations which led the New York Court of Appeals in Auten v. Auten, 308 N.Y. 155, 124 N.E. 2d 99, 101, 50 A.L.R.2d 246, to adopt a flexible choice-of-law rule looking to the "center of gravity" of the contract *a fortiori* applicable to the agreement here involved.[6] See also Rubin v. Irving Trust Co., 305 N.Y. 288, 113 N.E.2d 424; Global Commerce Corp., S. A. v. Clark-Babbitt Industries, Inc., 2 Cir., 239 F.2d 716. The insured was at all times a resident of New York; the defendant was licensed by New York to engage in the business of life insurance within the state; the policy was mailed by defendant's agent to the insured's residence in New York; and the original beneficiary was a resident of New York, as is the plaintiff herein. Under these circumstances a New York court could only conclude from a "grouping of the significant contacts" that the validity of the contract and its provisions is controlled by the internal law of the forum, which includes its public policy as legislatively expressed.

The same result follows from our determination that § 155 is, by its terms, applicable to this insurance policy. This is not the case of a statute which, though phrased in language of general applicability, is enacted without consideration of transactions involving extrastate elements. See, e. g., United States Mortgage & Trust Co. v. Ruggles, 258 N.Y. 32, 179 N.E. 250, 79 A.L.R. 802. Such enactments are readily construed as merely prescribing a rule of internal law without affecting choice-of-law rules, since there is no evidence of a contrary legislative purpose. But here the tenor of the comprehensive insurance regulation adopted by New York indicates a legislative awareness of the interstate character of most insurance transactions.[7] The statutory scheme carefully distinguishes "domestic," "foreign," and "alien" insurers. N.Y. Insurance Law § 4.[8] Further, § 155 contains explicit provision indicating its intended scope. It applies to any policy of life insurance "delivered or issued for delivery in this state."

Defendant asserts that, in view of the act's purpose to regulate the business of selling life insurance in New York, the provisions apply only to contracts made within the state. It is urged that physical delivery of the policy generally signifies the creation of the contract and that the statute is inapplicable where

---

5. The problems presented by contracts of adhesion are treated generally in Kessler, Contracts of Adhesion—Some Thoughts About Freedom of Contract, 43 Col.L. Rev. 629 (1943), and Ehrenzweig, Adhesion Contracts in the Conflict of Laws, 53 Col.L.Rev. 1072 (1953).

6. We read the reference to the *lex loci contractus* in New Amsterdam Casualty Co. v. Stecker, 3 N.Y.2d 1, 163 N.Y.S.2d 626, 143 N.E.2d 357, as applying only to the contract there considered in view of the fact that the Auten case is cited with evident approval.

7. It has been estimated that nine out of ten insurance transactions involve a for-

eign element. Lenhoff, Conflict Avoidance in Insurance, 21 Law & Contemp. Prob. 549 (1956).

8. See also N.Y. Insurance Law § 143(2), which provides: "No contract or policy of insurance delivered or issued for delivery in this state shall provide that the rights or obligations of the insured or of any person rightfully claiming thereunder shall, with respect to policies of life, accident or health insurance or annuity contracts upon persons resident in, or to policies of insurance upon property then in this state, * * * be governed by the laws of any state or country other than this state."

such delivery is immaterial to the formation of the contract unless it is otherwise executed within the state. In short, the statute is viewed as incorporating the principle that the validity of contractual provisions is governed by the *lex loci contractus*.

But it seems more reasonable to conclude that the primary purpose of the enactment was to protect residents of the state and that the tests of delivery or issuance for delivery in the state were adopted as a practical means of achieving such protection. See Carnahan, Conflict of Laws and Life Insurance Contracts § 33 at 205 (2d Ed.1958). Historically, policy applications often provided for acceptance by the insurer at its home office; and it is unlikely that the legislature adopted a reference to technical rules of contract formation which would permit such ready evasion as would largely impair the effectiveness of the regulation. Compare Union Mut. Life Ins. Co. of Iowa v. Bailey, 99 Colo. 570, 64 P.2d 1267. Further, the fact that § 155 prescribes alternative tests to determine applicability militates against the suggestion that a reference to a unitary conflicts rule was intended. Equally necessary to effectuate the statutory purpose is a construction of "delivery" as the equivalent of manual receipt, rather than as referring to the mere deposit of the policy in the mail.

Defendant suggests, however, that this construction of the statute renders it unconstitutional, citing Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342, and Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178. This objection does not require extended discussion, since the Supreme Court has subsequently rejected conceptualistic theories based upon the territoriality of vested rights, adopting instead an approach which looks to the state's governmental interest in the insurance transaction. Watson v. Employers Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct.

1023, 85 L.Ed. 1481, 134 A.L.R. 1462. Compare, however, Sun Insurance Office Limited v. Clay, 5 Cir., 265 F.2d 522, wherein the Supreme Court has granted certiorari, Clay v. Sun Insurance Office Limited, 361 U.S. 874, 80 S.Ct. 141, 4 L.Ed.2d 113. In any event there is no doubt that the special and substantial interest of the state in affording protection to its residents in the insurance field is widely recognized. Compare McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.E.2d 223; Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777, 145 A.L.R. 1113.

Judgment affirmed.