362 F.2d 430
 LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff-Appellee,
v.
TOWN OF POUND RIDGE, COUNTY OF WESTCHESTER, and Elizabeth Garfield, as Executrix of the Estate of Samuel H. Garfield, deceased, and Elizabeth Garfield, individually, Defendants-Appellants,
Mary Stolz, William B. Stolz, Norman W. Cook and Nancy B. Cook, Defendants.
 No. 287.
 Docket 30004.
 United States Court of Appeals Second Circuit.
 Argued March 23, 1966.
 Decided June 14, 1966.
 
 John C. Marbach, White Plains, N. Y. (Bleakley, Platt, Schmidt, Hart & Fritz, White Plains, N. Y., with him on the brief), for appellant Town of Pound Ridge.
 Milton G. Sincoff, New York City (Gerald A. Robbie, Kreindler & Kreindler, New York City, with him on the brief), for appellant Elizabeth Garfield.
 Perrell, Nielsen & Stephens, New York City, for defendant-appellant, County of Westchester.
 Sidney A. Schwartz, New York City (Edward Ash and Alexander, Ash & Schwartz, New York City, with him on the brief), for appellee.
 Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 This is an appeal by the defendants from a declaratory judgment in an action brought under 28 U.S.C.A. § 2201 holding that the plaintiff insurance company, Lumbermens Mutual Casualty Company, was not obligated under a policy issued to the insured defendant, Town of Pound Ridge, to defend the insured in actions pending in the Supreme Court of New York, County of Westchester, nor to indemnify the insured or pay any judgments which may be entered against it in such actions.
 
 
 2
 The state court actions arose from a collision between two cars on a county road in Westchester County on February 11, 1961. Samuel H. Garfield, a passenger in one of the cars, was killed. His widow brought suit in her own behalf and as his executrix against the driver-owner of the car in which her husband had been riding; the driver and the owner of the other car; the County of Westchester; and the Town of Pound Ridge. The suit against Pound Ridge proceeded on the theory that the town, which had entered into a contract with Westchester County to remove snow and ice from the road, was negligent:
 
 
 3
 "in improperly and carelessly removing snow and ice from said road; in improperly and carelessly storing snow and moving snow in close proximity to said road with the knowledge that thawing temperatures followed by freezing temperatures would produce an icy condition thereon that was dangerous to motor vehicles; in failing to maintain said road in a reasonably safe condition and free from ice thereon after receiving actual and constructive notice; in failing to sand said road; in sanding said road in an inadequate and careless manner; [and] in failing to warn plaintiff and plaintiff's decedent of the danger. * * *"
 
 
 4
 The driver-owner of the car in which Garfield had been riding brought suit in the New York Supreme Court against Pound Ridge on a similar theory, also naming Westchester as a defendant.
 
 
 5
 The policy issued by Lumbermens to Pound Ridge was a comprehensive general liability policy, under which Lumbermens agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." Similar coverage was provided for property damage liability. The policy went on to provide that "with respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, * * *."
 
 
 6
 The standard exclusions in the policy were supplemented by a rider, by its terms effective on the same day as the policy itself, as follows:
 
 
 7
 "EXCLUSION OF PRODUCTS HAZARD
 
 
 8
 It is agreed that the policy does not apply to the products hazard as defined herein."
 
 
 9
 The following definition of "products hazard" appears in the main body of the policy:
 
 
 10
 "(c) Products Hazard. The term `products hazard' means
 
 
 11
 (1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (A) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
 
 
 12
 (2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be `operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (A) of the declarations specifically includes completed operations."
 
 
 13
 The District Court found that no snow clearing operations were actually in progress at the scene and at the time of the accident and held that any possible liability of Pound Ridge was excluded from the coverage of the policy by the "completed operations" exclusion.
 
 
 14
 There is no dispute between the parties as to the applicability of New York law. The insurance company does business in New York; the insured is a New York municipal corporation; and the policy was delivered and countersigned in New York. See Nobile v. Travelers Indem. Co., 4 N.Y.2d 536, 542, 176 N.Y.S.2d 585, 152 N.E.2d 33 (1958); United States Mortgage & Trust Co. v. Ruggles, 258 N.Y. 32, 38, 179 N.E. 250, 79 A.L.R. 802 (1932); Employers Liab. Assur. Corp. v. Aresty, 11 A.D.2d 331, 205 N.Y.S.2d 711 (1st Dep't 1960), aff'd without opinion, 11 N.Y.2d 696, 225 N.Y.S.2d 764, 180 N.E.2d 916 (1962).
 
 
 15
 Under the law of New York, "if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company." Tonkin v. California Ins. Co., 294 N.Y. 326, 328-329, 62 N.E.2d 215, 216, 160 A.L.R. 944 (1945); Hartol Products Corp. v. Prudential Ins. Co., 290 N.Y. 44, 49, 47 N.E.2d 687 (1943). An insurance policy "should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import." Hartol Products, supra, at 50, 47 N.E.2d at 690; Janneck v. Metropolitan Life Ins. Co., 162 N.Y. 574, 578, 57 N.E. 182 (1900).
 
 
 16
 Applying these tests to the case before us, we find that the completed operations clause did not unambiguously exclude from coverage the risks which form the basis of the pending state actions, and that the town reasonably could have understood that the policy covered liability of the sort asserted in the state actions.
 
 
 17
 The rider entitled "EXCLUSION OF PRODUCTS HAZARD" is expressly limited to "the products hazards as defined" in the policy. In turning to the heading "3. Definitions" in the policy, paragraph (c) (2) thereof states under the subtitle "Products Hazard" that "the term `products hazard' means," among other things, "operations, if the accident occurs after such operations have been completed or abandoned." Conversely, if the "operations" were not completed, they would not fall within the "Products Hazard" definition and hence would not be covered by the exclusionary rider.
 
 
 18
 The insurer argues, and the trial court apparently agreed, that "operations" unambiguously means situations where men and equipment are at work on the scene. Since no men or equipment were at work on the scene at the time of the accident, the insurer maintains that the accident in which Garfield was killed must be considered the result of completed operations.[1] However, the word "operation" can equally well be taken to refer to a course of continuing work involving recurring inspection and other activities. Viewed in this sense, the operation of keeping snow and ice off the road where the accident occurred was still in progress. The town highway superintendent drove over the road frequently to determine whether sanding or snow removal was necessary. He had been over the scene of the accident twice on the day of the accident, once in the morning and once at dusk, a few hours before the accident. This pattern of repeated and continuing inspection distinguishes the case from Berger Bros. Elec. Motors, Inc. v. New Amsterdam Cas. Co., 293 N.Y. 523, 58 N.E.2d 717 (1944), in which the insured had completed its work of replacing certain electrical equipment and had left the premises some two months before the defective replacement began to cause damage. Clauss v. American Ins. Co., 214 F.Supp. 442 (E.D.Pa. 1963), is distinguishable for the same reason. There, the accident occurred some three and one-half months after the insured had finished installing a sewer. While the insured had guaranteed the installation and was obliged to make repairs if the need for repairs should be called to his attention, the insured had in fact done no work at the scene of the accident since the time of the installation.
 
 
 19
 Instead, the present case closely resembles Vito v. General Mut. Ins. Co., 15 A.D.2d 289, 223 N.Y.S.2d 431 (3d Dep't), leave to appeal denied, 11 N.Y.2d 644, 228 N.Y.S.2d 1026, 182 N.E.2d 62 (1962). There, the insured was a gas and fuel oil service company. Agents of the insured had not kept a customer's propane gas tanks full, as they were required to do under a service contract. As a result, the pilot light went out and accumulated gas exploded when the customer attempted to light his range. The court held that the continuing work required to keep the tanks full meant that the operations had not been completed, so that the completed operations exclusion did not apply. See also General Cas. Co. of Wisconsin v. Larson, 196 F.2d 170, 174-175 (8th Cir. 1952) (operation of cleaning and inspecting an oil burner was not completed when the cleaning was finished, but before the supervisor had a chance to inspect the job); Arnold v. Edelman, 392 S.W.2d 231 (Sup.Ct.Mo. 1965) (installation of revolving door was not complete when periodic adjustments were still being made, though none was in progress at the time of the accident).
 
 
 20
 We conclude that the completed operations language in the policy does not apply to the liability asserted in the pending state actions against the town, on the grounds that the continuing supervision at the scene of the accident meant that the town was still engaged in operations at the scene of the accident at the time of the accident. We do not mean to suggest that an insurance company cannot exclude from coverage liability not arising from damage to person or property occurring where the insured's men or equipment are physically present and at work. We say only that such an exclusion must be explicit and unambiguous to a person of average intelligence. The language under consideration does not meet these requirements.[2]
 
 
 21
 The insurance company contends in the alternative that it is obliged neither to defend nor to indemnify, because of the applicability of another clause in the policy, which provides that the policy shall not apply: "to liability assumed by the insured under any contract or agreement except (1) a contract as defined herein. * * *" The policy, as amended by a rider, defines "contract" to mean "if in writing, a Lease of premises, Easement Agreement, Side-tract [sic] Agreement, Elevator or Escalator maintenance Agreement, or Agreement required by Municipal Ordinance, except an agreement relating to Fire Protection."
 
 
 22
 Pound Ridge had entered into a contract dated November 10, 1960 with the County of Westchester, by the terms of which contract the town had agreed to remove snow and control ice on certain county roads located within the boundaries of the town until the end of the snow removal season on May 1, 1961, for a consideration of $200 per mile of road. A resolution of the town council approved the contract and authorized the town supervisor to sign it.
 
 
 23
 Lumbermens maintains that this contract was not "required by municipal ordinance" and did not in any other way fall within the definition of the kinds of contract not covered by the contractual liability exclusion. We do not need to decide this question since we are convinced that the contractual liability exclusion does not apply. The liability asserted against Pound Ridge in the state actions does not depend on a written contract, such as a contract to indemnify, to act as surety, or to procure insurance. Contrast Maryland Cas. Co. v. Waumbec Mills, Inc., 102 N.H. 200, 152 A.2d 619 (1959), and Weissblum v. Glens Falls Ins. Co., 40 Misc.2d 964, 244 N.Y.S.2d 689 (1st Dep't 1963). Instead, the state suits assert that the town was negligent in removing snow and in sanding the road. The town did not assume this liability by entering into the contract; its liability, if any, arose from its own subsequent acts. See Larsen v. General Cas. Co. of Wisconsin, 99 F.Supp. 300, 302 (D.Minn.1951), aff'd sub nom. General Cas. Co. of Wisconsin v. Larson, 196 F. 2d 170 (8th Cir. 1952); O'Dowd v. American Sur. Co., 3 N.Y.2d 347, 165 N.Y.S.2d 458, 144 N.E.2d 359 (1957); United States Fid. & Guar. Co. v. Virginia Engineering Co., 213 F.2d 109, 63 A.L.R.2d 1114 (4th Cir. 1954); A. T. Morris & Co. v. Lumber Mut. Cas. Ins. Co., 163 Misc. 715, 298 N.Y.S. 227 (Munic.Ct.N.Y.1937); Annotation, Scope and effect of clause in liability policy excluding from coverage liability assumed by insured under contract not defined in policy, such as one of indemnity, 63 A.L.R.2d 1122.
 
 
 24
 Accordingly, the judgment below is reversed and a judgment should be entered declaring that Lumbermens is required to defend the actions pending in Westchester County, and to indemnify Pound Ridge against such liability, if any, as may be imposed in such actions, unless it then appears that the town's liability arose from risks not covered by the policy.
 
 
 
 Notes:
 
 
 [1]
 The second step in this argument does not necessarily follow from the first. Even assuming the correctness of the insurer's interpretation of the word "operations," the absence of men and equipment from the scene does not require the conclusion that liability for the accident could be the result only of completed operations. The complaints in the state actions alleged failure to sand, as well as negligent removal of snow. It is at least arguable that sanding was a separate operation from snow removal, and that the sanding operation, not having been begun, cannot be described as "completed."
 
 
 [2]
 The "completed operations" language in the policy may be contrasted with an exclusion appearing elsewhere in the same policy which, if not wholly unambiguous, at least marks a commendable effort at clear statement: "It is agreed that such insurance as is afforded by the policy does not apply to streets and sidewalks of the named insured, except during the course of actual construction or repair of said streets or sidewalks at the place of occurrence of the accident."